UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANITA M. BARROW, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 16-11493-FDS |
| | ) | |
| v. | ) | |
| | ) | |
| HERBERT A. BARROW, JR., et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR *LIS PENDENS*, PLAINTIFF'S MOTIONS TO STRIKE, AND DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, J.**

This action arises out of the partition by sale of a property in Falmouth, Massachusetts, formerly owned by Emma Barrow, the mother of plaintiff Anita Barrow. Plaintiff is proceeding *pro se*.

In her will, Emma Barrow granted a life estate in the Falmouth property to one of her daughters, Willinda Powell Gray. Anita, Willinda, and a third sibling named Herbert Barrow were devised equal shares of the proceeds from the sale of the property as remaindermen. Willinda occupied the property after Emma's death, but allowed the property to fall into a state of disrepair. Willinda also failed to pay the mortgage on the property, and took out a new loan, secured by the property, on which she subsequently defaulted.

The property was ultimately sold for substantially less than its fair market. Anita then filed this action, contending that her siblings and various other individuals—those allegedly involved in either the decline in the property's value or its ultimate sale—discriminated against her in violation of federal and state law on the basis of race. Defendants have moved to dismiss

the complaint for failure to state a claim upon which relief can be granted.  For the reasons stated below, the motions will be granted.

I.  **Background**

   A.  **Factual Background**

Emma Barrow died on July 9, 2006.  (Compl. ¶ 55).  In her will, Emma devised her property in Falmouth, Massachusetts, to her three children.  (Compl. ¶ 33, 35, 48).  She granted defendant Willinda Powell Gray—the half-sister of Anita Barrow and Herbert Barrow—a life tenancy in the property.  The will further provided that upon Willinda's option or at her death, the property was to be sold, with the proceeds divided equally between Willinda, Herbert, and Anita or their issue.  (Compl. Ex. 2).  She named Michelle Maldonado, Willinda's daughter, as executor of her estate.  (Compl. ¶ 49).

Willinda began living on the property shortly after Emma's death in 2006.  (Compl. ¶ 56, 61).  Maldonado obtained an appraisal of the property on August 7, 2007, and an inspection of the property on September 7, 2007.  (Compl. ¶ 56–57).  At the time of Maldonado's final accounting in July 2010, the property had a fair market value of $625,000.  (Compl. ¶ 5).

In October 2009, Willinda took out a $23,506 loan from the Barnstable County Department of Health and Environment ("BCDHE") for improvements to the house.  (Compl. ¶ 91).  The County—through Kendall Ayres, the administrator of the Barnstable County Community Septic Management Loan Program—filed a betterment lien against the property for the value of the loan.  (*Id.*).  According to the complaint, the encumbrance violated the terms of Emma Barrow's will.  (Compl. ¶ 92).  The complaint also alleges that Ayres and BCDHE made the loan without adequately determining Willinda's ability to repay.  (Compl. ¶ 93).  Willinda defaulted on that loan in May 2010.  (Compl. ¶ 93).

At some point, Willinda renounced her life tenancy. In May 2014, the Barnstable County Probate Court issued a warrant of sale for the property. (Compl. ¶ 154). The court appointed Jennifer Roberts to act as commissioner for the sale. (Compl. ¶ 6).

According to the complaint, on July 1, 2014, Maldonado used a void and fraudulent deed to list the property for sale with Douglas Azarian at Kinlin Grover Realty. (Compl. ¶ 51, 70). Also according to the complaint, the deed overstated the powers of the executor to sell the property. (Compl. ¶ 148). On July 3, Anita travelled to Cape Cod; she stayed there for two weeks while trying to stop the sale of the property. (Compl. ¶ 123). On July 19, Maldonado, along with defendants Herbert, Willinda, and Azarian, attempted to sell the property "in a wasted condition" to defendant SDSB Investment Group for $385,000. (Compl. ¶ 52). George Mackoul, an attorney, represented Herbert, Gray, and Maldonado in that sale. (Compl. ¶ 70). It appears that the sale to SDSB fell through.

Throughout this time, Willinda continued to either live in or rent out the property. (Compl. ¶ 115). The complaint alleges that she failed to maintain the property and let it fall into a state of disrepair. (Compl. ¶ 115, 137). An inspection in August 2014 found a variety of problems, some cosmetic, some structural, and some potentially hazardous. (Compl. ¶ 117). The property was apparently also infested with rodents and had problems with mold. (Compl. ¶ 118).

Willinda also failed to pay the mortgage on the property. (Compl. ¶ 40). In September 2014, she received a notice of the right to cure the default from defendant Mutual Bank. (Compl. ¶ 95). The notice stated that the bank intended to commence foreclosure proceedings in February 2015 if all arrearages were not paid in full. (*Id.*) The bank did not send a notice of the right to cure to Anita. (Compl. ¶ 126).

Willinda filed a partition action in the probate court in November 2014. According to the complaint, the filing was a ruse, intended to divest Anita of her inheritance through the foreclosure of the property in February 2015. (Compl. ¶ 46). The bank allegedly "seized" the property on February 13, 2015. (Compl. ¶ 131). At some later point, Anita and Herbert apparently began making some payments on the mortgage. (Compl. ¶ 134–35).

In June 2015, Roberts, acting as commissioner, selected Margaret Gifford, a broker and realtor at Sotheby International, to sell the property. (Compl. ¶ 79–81). In July 2015, Roberts allegedly prevented Anita from having the overgrown lawn cut and weeded while the property was listed for sale. (Compl. ¶ 172). Roberts told Anita that she had no authority over the condition of the property and that Roberts would request an injunction if necessary to prevent her from having any involvement with the property during the listing and sales process. (Compl. ¶ 173). In response, Anita told Roberts to stop discriminating against her. (Compl. ¶ 174). Mackoul then told Anita that he would bring her behavior to the attention of the Probate Court if she continued to attempt to interfere in the sale of the property. (Compl. ¶ 175).

The property was ultimately sold on December 4, 2015, to defendant Falmouth Realty Investments for $385,261.14. (Compl. ¶ 110). The complaint alleges that that sale was unlawful because Emma's will required that the consent of all beneficiaries be obtained if the property was to be sold to any of the beneficiaries, and no inquiry was made as to whether Herbert and Willinda were affiliated with Falmouth Realty Investments. (Compl. ¶ 19). Renovations began shortly after the sale, and the property is now listed for sale at $759,000 by Sotheby International. (Compl. ¶ 20).

In April 2016, after Anita made clear her intentions to file a lawsuit, Roberts requested that the Probate Court "enjoin all funds due to plaintiff" resulting from the sale of the property.

(Compl. ¶ 170).  Roberts stated that until any such proceedings were complete, it would be impossible to determine the proceeds available for distribution, given the costs that the estate would have to incur in litigating such an action.  (Compl. ¶ 171).

The complaint does not specifically allege the race of Anita Barrow.  It appears, however, that she is African-American.

**B.     Procedural Background**

On July 18, 2016, plaintiff filed the complaint in this action.  The complaint alleges that defendants discriminated against her on the basis of her race in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* (Count 1); 42 U.S.C. §§ 1981, 1982, and 1983 (Count 2); and Massachusetts General Laws chapter 151B (Count 3).  The complaint also asserts a number of state-law tort claims for breach of fiduciary duty (Count 4); waste (Count 5); and fraud (Count 6).  It also asserts an action to quiet title (Count 7).

On August 31, 2016, defendants Mutual Bank and Bruce Duphilly, as well as defendant Douglas Azarian and defendants David Benton and Falmouth Realty, moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

On September 7, 2016, plaintiff filed a motion for a memorandum of *lis pendens* as to the Falmouth property.

On September 8, 2016, defendants Kendall Ayers and BCDHE moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim upon which relief can be granted, respectively.

On September 9, 2016, defendant Roberts; defendants Gifford and Sotheby International Realty; defendants Barrow, Harlow, Maldonado, Mooney, Mooney Planning Collaborative,

Gray, and SDSB Investment Group; and defendant George Mackoul all moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

On September 23, 2016, plaintiff moved to strike the motions to dismiss filed by defendants Mutual Bank, Bruce Duphilly, Douglas Azarian, Falmouth Realty, and David Benton. On October 5, she moved to strike the motions to dismiss filed by defendants BCDHE and Kendall Ayers. On October 18, she moved to strike the motion to dismiss filed by defendants Barrow, Harlow, Maldonado, Mooney, Mooney Planning Collaborative, Gray, and SDSB Investment Group.

## II.  **Legal Standard**

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz*, 521 F.3d at 84 (quotations and alterations omitted).

**III.    Analysis**

    **A.    Plaintiff's Motion for a Memorandum of *Lis Pendens***

Plaintiff has moved for the issuance of a memorandum of *lis pendens* to be recorded in the registry of deeds. "A memorandum of *lis pendens* is a notice recorded in the chain of title to real property warning all persons that such property is the subject matter of litigation and that any interest acquired during the pendency of the suit is subject to its outcome." *RFF Family P'ship v. Link Dev., LLC*, 849 F. Supp. 2d 131, 137 (D. Mass. 2012) (citing Mass. Gen. Laws ch. 184, § 15). Motions for memoranda of *lis pendens* shall be granted if "the subject matter of the action constitutes a claim of right to title to real property or the use and occupation thereof or the buildings thereon." Mass. Gen. Laws ch. 184, § 15.

This action does not involve a claim of right to title or to the use or occupation of property. Emma Barrow's will devised to plaintiff a share of the *proceeds* from the sale of the Falmouth property, but gave plaintiff no right to the property itself. The complaint centers around plaintiff's apparent frustrations with the way in which the property was sold—specifically, her allegations that the defendants discriminated against her by contributing, in various ways, to the sale of the property for less than its fair market value, thereby reducing her expected inheritance. Plaintiff does not appear to contend that she has a right to title or to use or occupy the Falmouth property. Furthermore, and in any event, the request will be mooted by the dismissal of the complaint. Accordingly, plaintiff's motion for a memorandum of *lis pendens* will be denied.

    **B.    Plaintiff's Motions to Strike**

In September and October 2016, plaintiff filed a series of motions to strike defendants' motions to dismiss. Plaintiff's motions contend that defendants' motions raise legally

7

insufficient claims and defenses and that they are improper under Rule 8, as they do not specifically admit or deny the factual allegations raised in the complaint.

As an initial matter, motions to strike under Rule 12(f) apply only to pleadings, and a motion to dismiss is not a pleading. *See Turner v. Hubbard Sys., Inc.*, 153 F. Supp. 3d 493, 495 (D. Mass. 2015); Fed. R. Civ. P. 7(a).[1] Motions to strike are not proper vehicles for objecting to legal arguments raised in motions to dismiss. *See Turner*, F. Supp. 3d at 496. Thus, to the extent that plaintiff contends that the defendants' motions are improper because they raise legally insufficient defenses, her motions will be construed as oppositions to the defendants' motions to dismiss rather than motions to strike.

Furthermore, while it is true that Rule 8 requires responsive pleadings to admit or deny the factual allegations asserted, a Rule 12(b) motion to dismiss is not a responsive pleading. *See* Fed. R. Civ. P. 7(a), 8(b). In fact, a Rule 12(b) motion to dismiss *must* be made *before* any responsive pleading. Fed. R. Civ. P. 12(b). Defendants' motions are therefore not improper under Rule 8. Plaintiff's motions to strike will accordingly be denied.

   **C.**   **Defendants' Motions to Dismiss**

   **1.**   **Fair Housing Act Claim**

The FHA prohibits, among other things, race discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling," as well as in the availability or terms or conditions of residential real estate related transactions, 42 U.S.C. §§ 3604(b), 3605(a). To prove a violation of the FHA, the plaintiff must show either that defendants acted with discriminatory intent, or that their actions have a disparate impact based on race. *Macone v. Town of Wakefield*, 277 F.3d 1, 5 (1st Cir. 2002). The complaint here fails to allege sufficient facts to meet either of those

---

[1] Motions to strike may also be used to object to the use of inadmissible affidavit evidence on a motion for summary judgment. *See Facey v. Dickhaut*, 91 F. Supp. 3d. 12, 19 (D. Mass. 2014).

requirements.

First, despite its considerable length, the complaint does not allege facts sufficient to demonstrate that any of the defendants acted with a discriminatory intent. "A plaintiff can show discriminatory intent by either direct or indirect evidence." *Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 155 (D. Mass. 2007) (internal quotation marks omitted). Here, the complaint does not allege either. For example, the complaint alleges that Willinda, Herbert Barrow, and Mackoul discriminated against plaintiff when they permitted the property to be foreclosed upon because they did so intending "to deprive Plaintiff of her rights to a fair sale of the property under state law." (Compl. ¶ 203(d)).[2] Even if true, the complaint does not allege facts suggesting that defendants intended to deprive her of those rights *because of her race*. Plaintiff does not allege, for example, any statements suggesting racial animus or any instances in which the defendants treated individuals of other races differently.

The complaint also alleges that defendant Roberts, the court-appointed commissioner, discriminated against plaintiff by refusing to permit her to inspect the property or arrange for maintenance services. Again, there is no specific factual allegation that Roberts did so because of her race. To the contrary, the complaint suggests that Roberts denied plaintiff access to the property because she was not an owner of the property itself, and thus lacked the authority to access the property or participate in the sale. (Compl. ¶ 173). There is no evidence suggesting that Roberts's stated reason was pretextual or that racial animus motivated her conduct.

The complaint also fails to allege sufficient facts to show that the conduct of the defendants disparately impacts African-Americans. *See Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Cmties. Project, Inc.*, 135 S. Ct. 2507, 2525 (2015) (holding that disparate-impact

---

[2] Presumably, if Herbert Barrow is Anita's brother, he is likewise African-American.

9

claims are cognizable under the FHA). A plaintiff can make out a claim for disparate impact by showing that the defendants' actions "actually or predictably [result] in racial discrimination." *Macone*, 277 F.3d at 7 (alteration in original) (internal quotation marks omitted). "In order to properly assert a disparate impact claim, plaintiff[] must plead (1) a specific and actionable policy, (2) a disparate impact, and (3) facts raising a sufficient inference of causation." *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 255 (D. Mass. 2008). Here, the complaint fails on all three prongs.

First, the complaint does not point to any specific policies of any of the defendants that result in racial discrimination. It alleges only that defendants, in various ways, acted to deprive plaintiff of the full value of her inheritance; there is no allegation of an unlawful practice or policy. A single decision relevant to a single piece of property, without more, is not evidence of a policy contributing to a disparate impact. *See Inclusive Cmties. Project*, 135 S. Ct. at 2523 ("[A] plaintiff challenging the decision of a private developer to construct a new building in one location rather than another will not easily be able to show this is a policy causing a disparate impact because such a one-time decision may not be a policy at all.").

Second, the complaint alleges no specific facts showing a disparate impact. A showing of disparate impact is usually made using statistical evidence. *See Hallmark Developers, Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1286 (11th Cir. 2006) ("Typically, a disparate impact is demonstrated by statistics."). Here, the only allegation of discrimination in the complaint consists of vague and general references to academic literature suggesting that partition sales of coastal properties may disparately impact African-Americans and deprive them of inherited wealth. (Compl. ¶¶ 177–182). Such general references to academic literature, without any tie to the acts or practices of any defendant in this specific case, are insufficient to state a claim for

relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing complaint because plaintiffs failed to plead enough facts to "nudge[] their claims across the line from conceivable to plausible").

Third, the complaint fails to allege any facts from which an inference of causation can be drawn. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between the defendants' conduct and a discriminatory effect] cannot make out a prima facie case of disparate impact." *Inclusive Cmties. Project*, 135 S. Ct. at 2523. Even if the Court assumes, as a general matter, that partition sales disparately impact African-American heirs, plaintiff has failed to show that any policies or practices of the defendants caused or contributed to such a discriminatory effect.

In addition to its substantive protections, the FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right protected by" the FHA. 42 U.S.C. § 3617. To prove an interference claim under § 3617, a plaintiff must show (1) that she is a member of an FHA-protected class; (2) that she exercised a right protected by the FHA; (3) that the defendants' conduct was motivated, at least in part, by intentional discrimination; and (4) that the defendants' conduct constituted coercion, intimidation, threat, or interference on account of having exercised a right protected by the FHA. *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 752 F. Supp. 2d 85, 95 (D. Mass. 2010).

The complaint alleges that defendants Roberts and Mackoul unlawfully threatened legal action against plaintiff in order to interfere with her attempts to exercise her rights under the FHA. (Compl. ¶¶ 170–176). According to the complaint, Roberts and Mackoul threatened legal actions in response to plaintiff's attempts to obtain access to the property prior to its sale and

again after she made clear her intention to bring a housing discrimination claim.  However, there is no allegation that plaintiff actually exercised or attempted to exercise a right protected by the FHA, or any specific allegation that the defendants were motivated by an intent to either discriminate against her or to interfere with her exercise of FHA rights.

In essence, plaintiff appears to contend that the defendants violated the FHA for two reasons:  first, because their conduct, in various ways, deprived her of the full value of her expected inheritance, and second, because they participated in a process that (on a nationwide basis) has adversely impacted African-American heirs as a general matter.  However, the actual conduct alleged in the complaint does not constitute actionable discrimination under the FHA.  Accordingly, the Fair Housing Act claim (Count 1) will be dismissed.

> 2. **Civil Rights Act Claims**
>
>> a. **Section 1981**

Section 1981 guarantees "equal rights under the law."  42 U.S.C. § 1981.  It "prohibits both public and private racial discrimination in certain specified activities."  *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002).  One such specified activity is the ability to enjoy "the full and equal benefit of all laws and proceedings for the security of persons and property."  To prove a violation under § 1981, plaintiff must show that (1) she is a member of a racial minority; (2) the defendants discriminated against her on the basis of race; and (3) their discrimination concerned at least one of the activities the statute describes.  *Id.*  Furthermore, the discrimination must be purposeful.  *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (holding that § 1981 "can be violated only by purposeful discrimination).

The claim here fails at the second prong.  For the reasons discussed above, the allegations of the complaint are simply insufficient to demonstrate that any of the defendants acted with the

purpose of discriminating against her on the basis of her race. Whatever her frustrations concerning her inability to participate in the property's sale, or the low selling price, nothing in the circumstances surrounding the sale of the property suggests that the unfavorable terms of the sale were in any way related to intentional acts of race discrimination.

### b. Section 1982

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real property." 42 U.S.C. § 1982. As with § 1981, only purposeful discrimination can rise to the level of a § 1982 violation. *City of Memphis v. Greene*, 451 U.S. 100, 135 (1981) (White, J., concurring). Again, the complaint fails to allege facts showing that any of the defendants were motivated by racial animus or the intent to discriminate on the basis of race.

### c. Section 1983

Section 1983 provides a private remedy against individuals who, acting under color of state law, cause a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It is unclear from the complaint which defendants are the intended subjects of the § 1983 claim, but the only defendants who could plausibly qualify are the Barnstable County Department of Health and Environment ("BCDHE") and Kendall Ayres, the administrator of the Barnstable County Community Septic Management Loan Program.

It is also unclear from the complaint what constitutional or other violation plaintiff intends to allege. Section 1983 does not itself confer any rights; rather, it is a "mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). To the extent that the complaint alleges violations of the Fair Housing Act, § 1981, or § 1982, the claims fail for the reasons set forth above. The complaint alleges that BCDHE and Ayres discriminated against plaintiff by (1) permitting Willinda to take out a loan to make improvements on the property—a loan on which she later defaulted—without first adequately determining her ability to pay and (2) maintaining a lien against the property over plaintiff's objections. (Compl. ¶ 93). Even assuming that plaintiff has standing under the FHA to bring claims related to a loan given to Willinda secured by property plaintiff did not own, the complaint again fails to allege any facts suggesting that the defendants were motivated by racial animus.

Accordingly, the claim for violations of the Civil Rights Act of 1866 (Count 2) will be dismissed.

### 3. State-Law Claims

Having dismissed all of plaintiff's federal-law claims, this Court declines to exercise jurisdiction over plaintiff's state-law claims. In deciding whether to retain supplemental jurisdiction over state-law claims after dismissing the foundational federal claims, courts are to consider factors such as "the interests of fairness, judicial economy, convenience, and comity." *Camelio v. American Federation*, 137 F.3d 666, 672 (1998). "'Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if federal claims are

dismissed before trial, . . . the state claims should be dismissed as well.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  As this case has yet to even enter discovery, and because there appears to be no unfairness to the parties from having the state court decide the remaining state-law issues, retention of the state-law claims would be inappropriate under the circumstances.

**IV.**     **Conclusion**

For the foregoing reasons:

1. Plaintiff's motion for a memorandum of *lis pendens* (Docket No. 21) is DENIED;

2. The motion to dismiss of defendants Duphilly and Mutual Bank (Docket No. 11) is GRANTED;

3. The motion to dismiss of defendant Azarian (Docket No. 15) is GRANTED;

4. The motion to dismiss of defendant Benton and Falmouth Realty Investments (Docket No. 18) is GRANTED;

5. The motion to dismiss of defendant Kendall Ayres (Docket No. 25) is GRANTED;

6. The motion to dismiss of defendant Barnstable County Department of Health and Environment (Docket No. 26) is GRANTED;

7. The motion to dismiss of defendant Roberts (Docket No. 30) is GRANTED;

8. The motion to dismiss of defendant Barrow, Harlow, Maldonado, Mooney, Mooney Planning Collaborative, Gray, and SDSB Investment Group (Docket No. 35) is GRANTED;

9. The motion to dismiss of defendant Mackoul (Docket No. 37) is GRANTED;

10. Plaintiff's motion to strike the motions to dismiss of defendants Mutual Bank, Duphilly, Azarian, Falmouth Realty Investments, and David Benton (Docket Nos. 40, 41) is DENIED;

11. Plaintiff's motion to strike the motions to dismiss of defendants Barnstable County Department of Health and Environment and Kendall Ayres (Docket No. 45) is DENIED;

12. Plaintiff's motion to strike the motions to dismiss of defendants Barrow, Harlow, Maldonado, Mooney, Mooney Planning Collaborative, Gray, and SDSB Investment Group (Docket No. 50) is DENIED;

13. Plaintiff's motion in opposition (Docket No. 51) is DENIED[3]; and

14. Plaintiff's motion for expedited relief and for supplemental jurisdiction over pending state court action is DENIED as moot.

**So Ordered.**

Dated:  November 29, 2016

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

---

[3] Plaintiff styled this document (Docket No. 51) as a "Motion in Opposition to all Defendants' Ongoing Violation of 42 U.S.C. § 3617 and to Clarify the Record in Support of Plaintiff's Cross Motion to Strike Pursuant to Fed. R. Vic. P. 12(f) and 42 U.S.C. § 3617 Pursuant to New HUD Regulations Amending 24 C.F.R. 100."  As far as this Court can discern, it is in essence an opposition to defendants' motions to dismiss and a memorandum in support of her motions to strike.  It does not appear to request any new or additional relief.  However, to the extent that it does, that relief is denied for the reasons stated above.