# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANITA M. BARROW, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) 16-11493-FDS |
| v. | ) |
| | ) |
| HERBERT A. BARROW, JR., et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER ON DEFENDANT AZARIAN'S MOTION FOR ATTORNEYS' FEES

**SAYLOR, J.**

This action arises out of the partition by sale of a property in Falmouth, Massachusetts, formerly owned by Emma Barrow, the mother of plaintiff Anita Barrow. In her will, Emma Barrow granted a life estate in the Falmouth property to one of her daughters, Willinda Powell Gray. Anita, Willinda, and a third sibling named Herbert Barrow were devised equal shares of the proceeds from the sale of the property as remaindermen. Willinda occupied the house for some time, and it fell into a state of disrepair. The property was ultimately sold for substantially less than its fair market value. Plaintiff, proceeding *pro se*, then filed this action contending that her siblings and various other individuals involved in either the decline in the property's value or its ultimate sale—including Douglas Azarian, a real estate agent who listed the property for sale—discriminated against her on the basis of race in violation of state and federal law, including the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, and 1983.

On August 31, 2016, Azarian moved to dismiss the claims against him for the failure to

state a claim upon which relief can be granted, which the Court granted. Azarian then moved for attorneys' fees. For the reasons stated below, that motion will be granted in part and denied in part.

I.     **Background**

    A.     **Factual Background**

The facts are set out fully in this Court's prior Memorandum and Order on Plaintiff's Motion for *Lis Pendens*, Plaintiff's Motion to Strike, and Defendants' Motions to Dismiss. (*See* Docket No. 58 at 2-5). As is relevant here, the facts are as follows.

Anita Barrow is an African-American woman. (Compl. ¶ 33). Her mother, Emma Barrow, died on July 9, 2006. (Compl. ¶ 55). In her will, Emma devised her property in Falmouth, Massachusetts, to her three children. (Compl. ¶ 33, 35, 48). She granted defendant Willinda Powell Gray—the half-sister of Anita Barrow and Herbert Barrow—a life tenancy in the property. The will further provided that upon Willinda's option or at her death, the property was to be sold, with the proceeds divided equally between Willinda, Herbert, and Anita or their issue. (Compl. Ex. 2). She named Michelle Maldonado, Willinda's daughter, as executor of her estate. (Compl. ¶ 49).

According to the complaint, on July 1, 2014, Maldonado used a void and fraudulent deed to list the property for sale with Douglas Azarian at Kinlin Grover Realty. (Compl. ¶ 51, 70). Also according to the complaint, the deed overstated the powers of the executor to sell the property. (Compl. ¶ 148). On July 3, Anita travelled to Cape Cod; she stayed there for two weeks while trying to stop the sale of the property. (Compl. ¶ 123). On July 19, Maldonado, along with defendants Herbert, Willinda, and Azarian, attempted to sell the property "in a wasted condition" to defendant SDSB Investment Group for $385,000. (Compl. ¶ 52). It appears that

2

the sale to SDSB fell through.

The property was ultimately sold, through a different realtor, to Falmouth Realty Investments for $385,261.14. (*Id.* at ¶¶ 19, 79-81, 196).

### B. Procedural Background

On July 18, 2016, plaintiff filed the complaint in this action. The complaint alleges that defendants discriminated against her on the basis of her race in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* (Count 1); 42 U.S.C. §§ 1981, 1982, and 1983 (Count 2); and Massachusetts General Laws chapter 151B (Count 3). The complaint also asserts a number of state-law tort claims for breach of fiduciary duty (Count 4); waste (Count 5); and fraud (Count 6). It also asserts an action to quiet title (Count 7).

On August 31, 2016, defendant Douglas Azarian, as well as a number of other defendants, moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On September 23, 2016, plaintiff moved to strike that motion to dismiss. This Court denied the motion to strike and granted the motion to dismiss on November 29, 2016.

On December 29, 2016, Azarian moved for an award of attorneys' fees pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c)(2), the Civil Rights Act, 42 U.S.C. § 1988(b), and sanctions pursuant to Fed. R. Civ. P. Rule 11. For the reasons stated below, that motion will be granted in part and denied in part.

## II. Analysis

### A. Attorneys' Fees

The FHA and the Civil Rights Act both authorize attorneys' fees for prevailing parties. *See* 42 U.S.C. § 3613(c)(2) ("[T]he court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee and costs."); 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."). In *Christiansburg Garment Co. v. Equal Employer Opportunity Comm'n.*, 434 U.S. 412, (1978), the Supreme Court held that when a defendant is the prevailing party in an action brought under Title VII of the Civil Rights Act of 1964, fees should be assessed against the plaintiff only if the plaintiff's claims were "frivolous, unreasonable, or groundless, or [if] the plaintiff continued to litigate after [they] clearly became so," *or* if the claims were brought or continued in bad faith. *Id.* at 422. The Supreme Court subsequently extended *Christiansburg* to claims for fees under § 1988(b) of the Civil Rights Act. *See Hughes v Rowe*, 449 U.S. 5, 14 (1980). Other courts have applied the same standard to claims brought under the FHA as well. *See, e.g., Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 50 (2d Cir. 2012); *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 606 (4th Cir. 1997).

In applying the *Christiansburg* standard, courts must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation." *Christiansburg Garment Co.*, 434 U.S. at 421-22. Rather, an assessment of fees against a plaintiff is only appropriate if the plaintiff filed an action with "absolutely no factual basis for the allegations made" and/or continued to litigate "after it became clear that the claims were baseless." *Fidelity Guarantee Mortg. Corp. v. Reben*, 809 F.2d 931, 935 (1st Cir. 1987).

District courts generally have broad discretion as to the amount of any fee award. *Gabriele v. Southworth*, 712 F.2d 1205, 1506 (1st Cir. 1983). The prevailing party has the burden of substantiating the requested fees with detailed billing records and hourly rates. *Spooner v. EEN, Inc.*, 664 F.3d 62, 68 (1st Cir. 2011). A district court need not accept the hours

4

and rates offered by the prevailing party. Indeed, the attorneys' records should be "scrutinized with care." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).

### 1. Method for Calculating Attorneys' Fees

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Spooner*, 644 F.3d at 67-69. The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den*, 749 F.2d at 950 (explaining that a court should subtract "hours which [are] duplicative, unproductive, excessive, or otherwise unnecessary"). "The court has a right—indeed, a duty— to see whether counsel substantially exceeded the bounds of reasonable effort." *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir 1988) (internal quotation omitted); *see also Dixon v. International Bhd. of Police Officers*, 434 F. Supp. 2d 73, 81-82 (D. Mass. 2006) (reducing an award in part because an average of 32.8 hours drafting a summary judgment motion was excessive). Further, a court may disallow or discount requests where the records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." *Torres-Rivera*, 524 F.3d at 336.

After determining the number of hours reasonably expended, a court's second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination

5

that is benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 950-51. It is well-established that the moving party bears the burden of establishing an attorney's level of skill and experience, and when a party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003).

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors. *Spooner*, 644 F.3d at 68. Those factors include (1) "a [party's] success claim by claim"; (2) "the relief actually achieved"; and (3) "the societal importance of the right which has been vindicated." *Coutin v. Young & Rubicam P.R.*, 124 F.3d 331, 338 (1st Cir. 1997).

"A request for attorney[s'] fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437 (noting that "[i]deally, of course, litigants will settle the amount of a fee"). In response to litigants' propensity to turn fee requests into a second round of litigation, the First Circuit has indicated that district courts are not required to engage in a minutely detailed analysis of fee requests. *See Metropolitan Dist. Comm'n*, 847 F.2d at 16 ("Consistent with this flexible paradigm, we perceive no need for the district court to drown in a rising tide of fee-generated minutiae . . . [and] a judge [should not] become so deluged with details that he is unable to view the claims for fees in perspective.") (internal quotation marks omitted)). The court has explained:

> Although there is some burden on the district court to explain why it makes a substantial adjustment, up or down, of a diary-supported bill, we have never required that district courts set forth hour-by-hour analyses of fee requests. What we expect the trial court to do is make concrete findings, supply a clear explanation of its reasons for the fee award, and most of all, retain a sense of overall proportion. In certain cases, these objectives may be better met by concentrating on what was necessary to be accomplished rather than on a welter of time sheets.

*Id.* (citations, alterations, and internal quotation marks omitted).

### 2. Whether an Award of Fees is Appropriate

As noted above, attorneys' fees should be assessed against plaintiff only if her claims were "frivolous, unreasonable, or groundless, or [if] the [she] continued to litigate after [they] clearly became so," *or* if the claims were brought or continued in bad faith. *Christansburg Garment Co.*, 434 U.S. at 422. Here, plaintiff's claims against Azarian were indeed groundless. As noted in the Court's earlier memorandum and order on defendants' motions to dismiss, the lengthy complaint was entirely devoid of any allegation that Azarian acted with the intent to discriminate against plaintiff based on her race or that he acted pursuant to any facially neutral policy that had a disparate impact on African-Americans. The complaint thus fell far short of stating a plausible claim for relief under either the FHA or the Civil Rights Act. There was absolutely no factual basis for the allegation that Azarian engaged in any kind of discriminatory conduct. Accordingly, an award of fees is appropriate under the circumstances.

### 3. The Amount of Fees

The fees requested by Azarian are summarized in the table below.

| Lawyer | Hours | Hourly Rate ($) | Fee Billed ($) |
|---|---|---|---|
| *Original Motions (Excluding Fee Petition)* | | | |
| Mary E. O'Neal | 13.7 | 350 | 4,795.00 |
|  | 12.7 | 375 | 4,762.50 |
| Anthony V. Bova II | 42 | 215 | 9,030.00 |
|  | 6.2 | 225 | 1,395.00 |
| **Total** | **74.6** | **-** | **$19,982.50** |
| *Fee Petition* | | | |
| Mary E. O'Neal | 10 | 375 | 3,750.00 |
| Anthony V. Bova II | 2.2 | 225 | 495 |
| **Total** | **12.2** | **-** | **$4,245.00** |
| **Total Hours and Fees Requested** | **86.8** | | **$24,227.50** |

Azarian's lead attorney, Mary E. O'Neal—a partner at the firm of Conn Kavanaugh Rosenthal Peisch & Ford, LLP, in Boston—has billed a total of 36.4 hours at a rate of either $350 or $375 per hour. Anthony V. Bova II, an associate at that firm, has billed a total of 52.6 hours at a rate of either $215 or $225 per hour.

  a.  **Hours Reasonably Expended**

Azarian contends that his attorneys should be compensated for 86.8 total hours spent litigating the motion to dismiss, plaintiff's motion to strike, and the motion for fees. In support of that request, his attorneys have submitted an affidavit summarizing their hours, billed in tenths-of-an-hour increments.

It appears that the hours billed are somewhat excessive. For example, Attorney O'Neal billed two-tenths of an hour, or twelve minutes, to review an e-mail from Azarian regarding service and to enter the date on which the answer was due into her calendar. In addition, it appears that she spent more than eight hours reviewing and editing the motion to dismiss that was drafted by Attorney Bova. Attorney Bova, in turn, billed approximately 14 hours to review the complaint and draft a memorandum to Attorney O'Neal, as well as an additional approximately 25 hours to draft and edit the memorandum in support of the motion to dismiss.

8

Attorney Bova also billed more than an hour for drafting a letter to plaintiff and sending a few e-mails regarding plaintiff's noncompliance with Local Rule 7.1.

Furthermore, the vagueness of the time entries provided makes it difficult for the Court to determine what specific tasks they performed and how efficiently they performed them. Their hours, at least as documented in the affidavits provided to the Court, are entered on a once-per-day basis and often include numerous individual tasks, making it impossible to discern how much time was allocated to which tasks. For example, in one entry, Attorney O'Neal billed three hours for editing the motion to dismiss, preparing the motion for filing, and sending several e-mails. On another occasion, Attorney O'Neal billed three hours for reviewing a memorandum from Attorney Bova, analyzing the issues presented in the memorandum, and sending two e-mails. Finally, Attorney O'Neal billed 10 hours for drafting the motion for attorneys' fees itself, with absolutely no specification regarding how much time was spent on what tasks. Attorney Bova billed an additional 2.2 hours for the motion for attorneys' fees, again with no specification regarding how that time was spent.

Given the vagueness of the billing information provided and what appear to be somewhat inflated hours, the Court will reduce each attorney's hours. Accordingly, Attorney O'Neal's 36.4 hours will be reduced by approximately 30 percent to 25 hours, and Attorney Bova's hours will be reduced by approximately 40 percent from 52.6 hours to 31 hours.

### b. **Reasonable Hourly Rates**

Next, the Court must determine the reasonableness of the requested rates as benchmarked against "prevailing rates in the community." *See Gay Officers League*, 247 F.3d at 295. Attorney Mary E. O'Neal has requested an hourly rate of $350 per hour for approximately half of her representation, and then at a rate of $375 per hour to reflect an increase in her rates in

9

September 2016. Attorney Bova has requested a rate of $215 for half of his representation, and then at a rate of $225 to reflect a similar increase in his rates.

O'Neal and Bova have supported their billing rates by providing an affidavit stating that they are experienced attorneys and that their rates are "fair and reasonable." O'Neal further stated that she typically bills clients $415 per hour, but billed Kinlin Grover Realty Group—Azarian's employer and a long-time client of O'Neal's—$350 at the commencement of the matter and $375 as of September 2016. That may all be true, but the Court's determination of the reasonableness of the requested rate must be "based on evidence other than the attorneys' affidavits." *Deary v. City of Gloucester*, 9 F.3d 191, 198 (1st Cir. 1993). The attorneys have failed to provide any additional information to support their requested rates, and Azarian, as the moving party, has therefore not met his burden of establishing that the requested rates are in fact reasonable under the circumstances.

Furthermore, in determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. As to who performed the work, the affidavit submitted by attorney O'Neal states that she is a partner with approximately 20 years of experience—primarily in employment law and business litigation—and that attorney Bova is an associate with approximately three years of experience (as of the commencement of this case). As to the type of work performed and the expertise required, those factors suggests that the requested rates should be reduced. While the complaint was lengthy and rather difficult to parse, the legal issues involved were straightforward and required no special expertise to address. Accordingly, the Court will reduce O'Neal's rate to from $350 and $375 to $300 for all work performed, and will reduce Bova's rate from $215 and $225 to $175 for all work performed. That results in a base

award of $12,925.

### c. Adjustment

The base lodestar amount may be adjusted upward or downward based on a number of factors including claim-by-claim success and the results obtained. *Coutin*, 124 F.3d at 338. Here, defendant succeeded in having every claim against him dismissed. Any further reduction in the award is therefore unnecessary. Furthermore, under the circumstances, the Court declines to upwardly adjust the lodestar amount—which "represents a presumptively reasonable fee," *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).

### 4. Conclusion

In summary, the Court finds that a reasonable award of attorneys' fees under the circumstances is as follows: attorney O'Neal will be compensated for 25 hours of work at a rate of $300 per hour and attorney Bova will be compensated for 31 hours of work at a rate of $175 per hour, for a total of $12,925.

## B. Sanctions

Rule 11 of the Federal Rules of Civil Procedure authorizes courts to impose sanctions against attorneys or unrepresented parties for filing pleadings, written motions, or other papers that: (1) are "presented for any improper purpose, such as to harass," (2) contain claims not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or (3) contain factual contentions (or denials) without evidentiary support. Fed. R. Civ. P. 11(b), (c). "The imposition or a Rule 11 sanction usually serves two main purposes: deterrence and compensation. . . . Encompassed within these objectives are several related subsidiary goals, e.g., punishing litigation abuse and facilitating case management." *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992) (internal

citations omitted). The Advisory Committee notes regarding the 1993 amendments to Rule 11 set forth the following non-exhaustive list of factors to be considered in determining whether sanctions are warranted:

> "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants . . . ."

Fed. R. Civ. P. 11 Advisory Committee's Note (1993).

While *pro se* litigants are generally to be treated with more leniency than those represented by counsel, the "right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." *Eagle Eye Fishing Corp. v. United States Dept. of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994) (internal quotation marks omitted). Rule 11 sanctions may be imposed against *pro se* litigants, particularly where they repeatedly assert baseless claims or file claims solely for the purpose of harassing others. *See Jones v. Social Sec. Admin.*, 2004 WL 2915290, at *4 (D. Mass. Dec. 14, 2004).

### 1. **Whether Sanctions are Appropriate**

As stated above, Rule 11 sanctions serve two main purposes: deterrence and compensation. *See Navarro-Ayala v. Nunez*, 968 F.2d at 1426. Here, those purposes are sufficiently served by the award of attorneys' fees. Under the *Christiansburg* standard, fee awards assessed against plaintiffs serve to deter the filing of frivolous and groundless claims. Furthermore, the fee award is adequate compensation for having to defend against the frivolous

claims.  Accordingly, the Court declines to impose any additional sanction under Rule 11.

**IV.	Conclusion**

For the reasons stated above, the motion of defendant Douglas Azarian for attorneys' fees is GRANTED in the amount of $12,925, and is otherwise DENIED.

**So Ordered.**


Dated:  July 10, 2017

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge